NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-0803

STATE OF LOUISIANA

VERSUS

EARL J. VOISIN

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 05-901
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Michael G. Sullivan, Judges.

**AFFIRMED.**

Jeffrey J. Trosclair
Assistant District Attorney—Sixteenth Judicial District
St. Mary Parish Courthouse
Franklin, LA  70538
(337) 828-4100
COUNSEL FOR APPELLEE:
      State of Louisiana

Laura Pavy
Louisiana Appellate Project
Post Office Box 750602
New Orleans, LA  70175

**(504) 833-2910**
**COUNSEL FOR DEFENDANT/APPELLANT:**
　　**Earl J. Voisin**

**Earl J. Voisin**
**IN PROPER PERSON**
**Allen Correctional Center**
**Jupiter A1-11**
**3751 Lauderdale Woodyard Road**
**Kinder, LA  70648**

PETERS, J.

A jury convicted Defendant, Earl J. Voisin, of the offense of second degree kidnapping, a violation of La.R.S. 14:44.1. Thereafter, the trial court sentenced him to serve a period of twenty-five years at hard labor, with the first two years of the sentence imposed to be served without the benefit of probation, parole, or suspension of sentence. The trial court also ordered Defendant to pay the victim $1,775.35 as restitution. After the trial court denied his motion to reconsider the sentence imposed, Defendant perfected this appeal. For the following reasons, we affirm Defendant's conviction and sentence in all respects.

With regard to the elements of the offense and the penalty that may be imposed, La.R.S. 14:44.1 provides in pertinent part:

> A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
> . . . .
> (3) Physically injured or sexually abused;
> . . . .
> (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
>
> B. For purposes of this Section, kidnapping is:
>
> (1) The forcible seizing and carrying of any person from one place to another . . . .
> . . . .
>
> C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

Defendant does not contest his conviction on appeal, and the facts giving rise to the charge are not seriously disputed.[1] He and the victim, Jackie Bennett, met in

---

[1] Some aspects of Defendant's *pro se* assignment of error raise issues concerning his conviction based on ineffective assistance of counsel, and we will address those aspects later in the opinion. However, even in that assignment of error, there exists no serious argument that Defendant did not commit the acts testified to by the victim.

an internet chat room in May of 2002. From that beginning, their relationship evolved over the ensuing months, and, in August of 2004, Ms. Bennett invited Defendant to move into her New Iberia, Louisiana residence with her. After Defendant accepted her invitation, their relationship began to deteriorate. It completely dissolved when, in the first week of April of 2005, Ms. Bennett formally evicted Defendant.

In the days after his eviction, Defendant constantly harassed Ms. Bennett by telephone, and, at approximately 11:00 a.m. on April 9, 2005, he appeared at her door for the asserted purpose of retrieving his personal belongings. When Ms. Bennett attempted to hand him two garbage bags containing some of his personal effects, he grabbed her arm, pulled her from the residence, and forced her into his vehicle. Ms. Bennett involuntarily remained in Defendant's custody through the early morning hours of April 10.[2]

When Defendant first forced Ms. Bennett into his vehicle, she observed that he had a pistol in the waistband of his pants. When she tried to exit the vehicle, he grabbed her ponytail and forced her back into her seat.[3] As Defendant drove aimlessly around the countryside, he continued to verbally and physically abuse Ms. Bennett. On a number of occasions, he threatened her with the pistol and would place it to her head from time to time.[4] Defendant stopped the vehicle a number of times

---

[2]The record does not clearly establish when Defendant surrendered to the police. The only reference to time is a 3:13 a.m. and 3:15 a.m. notation on the Miranda Rights Form executed by Defendant in the Iberia Parish Sheriff's Office on the morning of April 10. Testimony indicated that Defendant signed this form almost immediately after being taken into custody.

[3]Ms. Bennett testified that she suffered a whiplash from Defendant's violent treatment over the entire episode. However, the State of Louisiana introduced no medical evidence to support this claim.

[4]The pistol was actually an unloaded BB gun, but it was not until late in the events of the day that the victim became aware of this fact.

during the day to allow Ms. Bennett to take care of her personal needs, but at no time did he give her the opportunity to alert others of her situation without placing them in danger, and Ms. Bennett resolved herself to her fate rather than endanger the bystanders.

In an effort to protect herself, she attempted to cooperate with Defendant by pleading with him and professing her love for him. At one point in the afternoon, he stopped in a wooded area and asked her if she wanted to have sex with him. Because she was still concerned with the consequences of not cooperating, she told him she would have sexual intercourse with him. She testified that, after they had completed the act, the experience was "sickening" to her. It was after this time that Defendant confessed to her that the weapon was an unloaded BB gun. Although Ms. Bennett became angry for having been tricked, she was still in Defendant's physical custody and feared for her well-being.

During the ordeal, Defendant received telephone calls on his cell phone from Ms. Bennett's son and, ultimately, from Officer Allen Bares, Jr., of the Iberia Parish Sheriff's Department. As a result of the negotiations, Defendant ultimately took Ms. Bennett to the Iberia Parish Sheriff's Office and surrendered to the authorities.

### *Assignment of Error Number One*

Defendant's trial ended on January 26, 2006, and the trial court sentenced him on April 6, 2006. The trial court initially sentenced Defendant to serve thirty years at hard labor, with the first two years being without the benefit of probation, parole, or suspension of sentence, but suspended ten of the thirty years and ordered that Defendant be placed on five years supervised probation upon his release from prison. However, immediately upon stating the sentence, the State of Louisiana requested a

3

bench conference. Upon completion of the bench conference, the trial court set aside the sentence imposed and sentenced the defendant to the sentence now before us—twenty-five years at hard labor, with the first two years being without the benefit of probation, parole, or suspension of sentence, and restitution in the amount of $1,775.35.

The trial court changed its sentence and eliminated the suspended portion of the sentence based on its interpretation of La.Code Crim.P. art. 893. Defendant's counsel immediately objected to the imposed sentence and orally moved for reconsideration, arguing to the trial court that it did have the authority to suspend a part of the sentence. In his first assignment of error, Defendant argues that, "[d]ue to a misapprehension of the law, the trial court imposed an excessive sentence in violation of appellant's fundamental right to due process of law." We find no merit in this assignment of error.

As previously stated, La.R.S. 14:44.1(C) provides that an individual convicted of second degree kidnapping "shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence." However, La.Code Crim.P. art. 893(A) provides in pertinent part that "[t]he court *shall not* suspend the sentence of a conviction for a crime of violence as defined in R.S. 14:2(B) . . . ." (Emphasis added). Second degree kidnapping is defined as a crime of violence in La.R.S. 14:2(B)(16). Thus, the trial court did not err in refusing to suspend any portion of Defendant's sentence.

### *Assignment of Error Number Two*

4

In this assignment of error, Defendant argues that the trial court imposed a sentence so excessive that it cannot withstand constitutional scrutiny because his age, the facts of the case, and "his exemplary record" do not justify such a sentence. We find no merit in this assignment of error.

To constitute an excessive sentence, the penalty must be grossly disproportionate to the severity of the crime or be nothing more than needless imposition of pain and suffering. *State v. Howard*, 414 So.2d 1210 (La.1982). Additionally, the trial court is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *Id.*

The sentence imposed on Defendant is in the mid-range of the statute. In sentencing Defendant, the trial court stated the following:

> All right. In sentencing Mr. Voisin, the court considers the following items: State's Exhibit Number 1, which is the letter he wrote during the trial to the victim; the victim's impact statement by Jackie Bennett, and therein she advises of the suffering which she has undergone as a result of the crime committed against her by Mr. Voisin. And she has suffered substantially physically and mentally as a result of this incident.
>
> I consider that Mr. Voisin is 43 years of age, that he's an educated person, that he's worked in the medical field for a number of years.
>
> . . . .
>
> That he has no prior convictions, which is to his benefit.
>
> I think that there is an undue risk that during any period of a suspended sentence or probation the defendant would or could commit another crime without having suffered a period of incarceration.
>
> I find that he's in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

A lesser sentence than that I will give would deprecate the seriousness of this matter.

His crime indicated that he was particularly cruel to a victim who really in the situation she was in was—I would say, was in a position of being at a disadvantage in connection with the relationship they had previously had with one another.

I find that his conduct during the commission of the offense manifested deliberate cruelty to the victim.

The defendant used threats of or actual violence in the commission of his offense.

The offender used a dangerous weapon in the commission of the offense.

Mr. Voisin, the court feels that you are a danger to this victim and to the community because of the manner in which you conducted yourself in committing this crime and the obvious inability of you to distance yourself from this victim, even at the point of trial when you wrote to her indicating of course still wanting to have a relationship with her, which indicates to this court the danger if you were out that you would attempt a similar situation with this victim.

The sentencing reasons establish clearly that the trial court applied the sentencing guidelines found in La.Code Crim.P. art. 894.1 and considered both aggravating and mitigating circumstances. We find that the sentence imposed is not grossly disproportionate to the severity of Defendant's crime and does not constitute needless imposition of pain and suffering. Thus, we find that the trial court did not abuse its wide discretion in sentencing Defendant.

### *Assignment of Error Number Three*

Defendant, in this assignment of error, requests that this court perform an errors patent search of the record and give him the benefit of any such error we may find. This court always recognizes its obligation pursuant to La.Code Crim.P. art. 920 to consider on appeal "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence," and this case is

6

no exception. We have performed an errors patent search and find no such errors.

## *Pro Se Assignment of Error*

Defendant has filed a *pro se* assignment of error wherein he asserts ineffective assistance of counsel at trial. Specifically, he makes the following assertions in support of this claim:

(1) His attorney did not speak with him for 201 days after being appointed by the court.

(2) His attorney did not add support to Defendant's arguments made at hearings on Defendant's many *pro se* pretrial motions.

(3) His attorney did not keep him informed of the progress on his case.

(4) His attorney did not ensure that Defendant was present for several hearings.

(5) His attorney did not appear at one of his bond reduction hearings.

(6) His attorney was overburdened by his caseload.

(7) His attorney showed poor conduct in representing Defendant.

(8) His attorney accepted two people as jurors in direct conflict with Defendant's orders to reject any such people as jurors.

(9) His attorney did not want to introduce evidence favorable to Defendant at trial.

(10) His attorney refused to ask questions Defendant had prepared for cross-examination of the State of Louisiana's witnesses.

(11) His attorney told the jury that he [the attorney] did not know what he was doing by stating, "Because most lawyers don't deal with criminal law. And even the ones that do, most of them don't know what they're doing, okay?"

(12) His attorney did not play for the jury a DVD of the victim's statement.

(13) His attorney forced Defendant to testify at trial against his will by threatening contempt charges and a guilty verdict.

7

(14)  His attorney did not object to a line of questioning during the State of Louisiana's cross-examination of Defendant on the basis that Defendant did not understand the questions.

(15)  His attorney did not object to the trial court telling the jury that Defendant knowingly or intentionally committed the crime.

(16)  His attorney told the jury that a not-guilty verdict is not the same as finding Defendant innocent.

(17)  His attorney did not ensure that Defendant was present at conferences with the prosecution for the discussion of plea agreements.

(18)  His attorney did not certify to the court in writing that he had advised Defendant of any plea offers.

(19)  His attorney did not request a psychiatric evaluation.

(20)  His attorney did not investigate.

(21)  His attorney did not present character witnesses at the sentencing.

(22)  His attorney did not obtain a copy of the presentence investigation report.

Defendant also adds complaints that, even though the trial court recognized that he did not trust his attorney, it did not intervene to resolve the representation problem and that the trial court refused to grant the jury's request to view evidence favorable to him.

> A claim of ineffective assistance of counsel generally is more properly raised in an application for post-conviction relief than on appeal. In post-conviction proceedings, the district judge can conduct a full evidentiary hearing on the matter. However, when the record contains evidence sufficient to decide the issue, the appellate court may consider the issue in the interests of judicial economy.

*State v. Brumfield*, 96-2667, pp. 13-14 (La. 10/20/98), 737 So.2d 660, 668-69, *cert. denied*, 526 U.S. 1025, 119 S.Ct. 1267 (1999) (citation omitted).

8

We find that the record contains sufficient information to review only two of Defendant's complaints against his trial counsel—those listed herein as numbers 11 and 15.

In the complaint listed as number 11, Defendant asserts that his trial attorney's performance was deficient because he told the jury that he did not know what he was doing. However, Defendant's complaint is taken out of context as the complete record shows that Defendant's trial attorney simply seized an opportunity during *voir dire* to obtain the goodwill of potential jurors. The attorney's *full* statement concerning the point at issue is as follows:

> Look, we're going to be experts about kidnapping. When this is all said and done, you're going to know more about kidnapping than 90 percent of the attorneys in this area, okay? Because most lawyers don't deal with criminal law. And even the ones that do, most of them don't know what they're doing, okay?

Thus, the full remark was not an expression of his personal ignorance, but clearly trial strategy. "[I]f an alleged error is part of counsel's trial strategy, it does not establish ineffective assistance of counsel." *State v. Esteen*, 02-1241, p. 8 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 174, *writ denied*, 03-1486 (La. 1/9/04), 862 So.2d 978.

In the complaint listed as number 15, Defendant contends that his trial attorney's performance was deficient because he did not object when the trial court told the jury that Defendant had knowingly or intentionally committed the crime. Again, when the entire record is considered, it is clear that the complaint relates to an explanation from the trial court concerning the nature of the case against Defendant. The statement at issue reads as follows:

> This case that we're taking up now is State of Louisiana versus 05-CR-901, Earl Voisin. Mr. Voisin is charged, on or about April 9, 2005 through April 10, 2005, did knowingly or intentionally commit second degree kidnapping by committing second degree kidnapping of

Jackie Bennett, contrary to the laws of the State of Louisiana and against the peace and dignity of the same, Louisiana Revised Statute, 14, Section 44.1.

Reference to the charge against Defendant constituted no basis for an objection, and Defendant's trial counsel's performance was not deficient because he failed to object.

We cannot address the remaining contentions because the facts surrounding those issues are not a part of the record. Therefore, Defendant has failed to establish a sufficient basis for this court to deviate from the normal practice of relegating the consideration of ineffective assistance of counsel issues to post-conviction relief.

## DISPOSITION

For the foregoing reasons, we affirm the Defendant's conviction and sentence in all respects.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2-16.3.